Argued October 11, reversed and remanded October 22, 1918.

## SABIN *v.* CHRISMAN.

(175 Pac. 622.)

**Execution—Custody of Property—Delivery to Bailee.**

1. An officer making levy of an execution may, at his own risk, deliver the property levied upon to a bailee and take a receipt therefor, and in such case the goods are regarded as still being in his custody.

**Execution—Wrongful Execution—Liability of Plaintiff in Writ.**

2. Where an officer levies a writ of execution on the property of a stranger, the latter may sue plaintiff in the writ, either for reclamation of the property or to recover damages, though property was destroyed or sold subsequent to wrongful levy.

**Sheriffs and Constables — Wrongful Execution — Liability of Officer Making Execution.**

3. An officer who levies execution on property of a stranger is guilty of conversion, although levy was made in good faith, and although property was not actually taken or removed.

**Sheriffs and Constables—Conversion—Liability of Sheriff.**

4. A sheriff, who levied execution upon property that had passed from defendant named in writ into the hands of his assignee for benefit of creditors, was liable for conversion of such property, although he had not removed it, and had placed it in the hands of a third party, from whom he had taken receipt.

[As to liability of sheriff for misperformance of official duties, see note in 95 Am. St. Rep. 96.]

From Wasco: WILLIAM L. BRADSHAW, Judge.

Department 2.

This is an action of damages for a conversion. The cause was tried by the court without a jury, resulting in the findings of facts and conclusions of law and a judgment in favor of defendants. Plaintiff appeals.

The facts necessary to an understanding of the case are as follows: On the fifteenth day of August, 1914, P. Perlman, who was the owner of a stock of mer-

chandise, including the stoves and ranges involved in this action, transferred the same by deed of assignment to R. L. Sabin, plaintiff for the benefit of his creditors *pro rata.* The possession of the property was taken by Mr. Sabin, through his agent, Mr. J. M. Foster, on the following day. The validity of this transaction was passed upon and approved by this court in the case of *Sabin* v. *Chrisman et al.,* 79 Or. 191 (154 Pac. 908). On August 19, 1914, defendant Levi Chrisman, sheriff of Wasco County, Oregon, accompanied by the attorney for the Portland Association of Credit Men, the other defendant herein, proceeded to the store at The Dalles, Oregon, being then armed with an execution on a judgment in favor of the Portland Association of Credit Men and against P. Perlman, the former owner of the store. They found in the store one J. S. Fine who was then employed as a clerk by J. M. Foster, the agent of R. L. Sabin. The sheriff was informed of the assignment and that Mr. Foster was in charge for the assignee. Mr. Foster who had stepped out for a few moments returned to the store and protested against the levy. The sheriff then proceeded to levy upon the entire stock in the store, but was induced to levy upon a portion of the goods only; Mr. Foster protesting. The sheriff designated seven cooking-ranges, which were in the store already segregated, and placed them in charge of Mr. J. S. Fine, whom he knew and had confidence in to hold for the sheriff and took a receipt from Mr. Fine, which is as follows:

"The Dalles, Oregon,
"August 19th, 1914.

"Received from Levi Chrisman, Sheriff, of Wasco County, Oregon, Seven steel cooking ranges levied

upon under execution in case of Portland Association of Credit Men vs. P. Perlman.

"J. S. FINE, Mgr."

The ranges were not removed by the sheriff nor by the plaintiff or his agents, but remained continuously in the care of J. S. Fine until August 29th, when they were destroyed by fire, together with other property. The loss was not occasioned by any fault of the sheriff or the other defendant, nor of the plaintiff or his agents. The sheriff did not leave with J. M. Foster or J. S. Fine either a copy of the execution or notice specifying the property levied upon. The defendant sheriff testified in regard to the levy that:

"He [Foster] came back and said the stock was in their hands, and wanted to know if I could not levy on sufficient property to cover the execution without locking the store up, and I told them I would, and I took possession of a number of ranges. Q. Just tell what you did, Mr. Chrisman. * * The receipt shows for itself; that is what I did."

And stated to the effect that Fine was holding the property in question for him as the receipt showed. It is admitted that at the time of the alleged levy, the personalty in question was of the value of $225.50, and that Sabin was the owner and entitled to the possession of the property. The trial court made findings of fact to the purport as above stated, and found as conclusions of law: That the acts of the sheriff, Levi Chrisman, as hereinbefore set forth, did not constitute a levy and did not operate to dispossess the plaintiff, R. L. Sabin, or his agents of said goods and chattels, and:

"That the acts of said Levi Chrisman and Portland Association of Credit Men, or either of them, as hereinbefore set forth, did not constitute a conversion; that the defendants are not liable to the plain-

tiff in any sum whatsoever and said action should be dismissed.''

A judgment was rendered accordingly.

REVERSED AND REMANDED WITH DIRECTIONS.

For appellant there was a brief, over the name of *Messrs. Teiser & Smith,* with an oral argument by *Mr. Sidney Teiser.*

For respondents there was a brief and an oral argument by *Mr. Maurice W. Seitz.*

BEAN, J.—Plaintiffs take the position that in view of the fact that the property was not the property of the judgment debtor: Citing *Sabin* v. *Chrisman et al.,* 79 Or. 191 (154 Pac. 908), the sheriff's taking possession of, and assumption of control over the ranges, and his interference with plaintiff's dominion over the property, constituted a conversion. And as the property had never been returned to him by the sheriff or the other defendant, he was entitled to damages to the extent of the value of the property, notwithstanding the same had been destroyed by fire. The defendants contended: First, that the acts of the sheriff did not constitute a valid levy, or give the sheriff any jurisdiction over the property, or change possession thereof; second, that even if the acts of the sheriff could be called a levy, it was a mere paper levy, and insufficient to constitute a conversion; that the goods having been left in the actual possession of the agents of plaintiff, their subsequent destruction by fire without fault or dereliction on the part of defendants does not furnish ground for any liability against either of them.

As we understand it, it is not a question as to whether or not the levy of the execution on the judg-

ment against Perlman by the defendant sheriff created a lien on the property. ° In order for the levy to have had such an effect, the property must have belonged to Perlman. The question for determination here is, Did the sheriff and the plaintiff in the writ commit a trespass on Sabin's property by wrongfully interfering therewith, in a manner subversive of the rights of plaintiff who was the owner of the personal property to his injury?

In 38 Cyc., 2005, it is said:

"Conversion is 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.' The legal wrong denominated 'conversion' is any unauthorized act of dominion or ownership exercised by one person over personal property belonging to another, and 'trover' is the technical name of the common-law action provided for the redress thereof."

Under no other rule can a person be protected in his right to property.

In *Budd* v. *Multnomah Street Ry. Co.*, 12 Or. 271 (7 Pac. 99, 53 Am. Rep. 355), the court said:

"The wrong lies in the interference with the owner's right to do as he will with his own. Whoever does this in any manner subversive of the owner's right to enjoy or control what is his own, is guilty of a conversion."

See, also, 2 Cooley on Torts (3 ed.), p. 859; *Ramsby* v. *Beezley,* 11 Or. 49, 51 (8 Pac. 288); *Madden* v. *Condon National Bank,* 76 Or. 363 (149 Pac. 80); *Gregory* v. *Oregon Fruit Juice Co.,* 84 Or. 199, 202 (164 Pac. 728); *Velsian* v. *Lewis,* 15 Or. 539 (16 Pac. 631, 3 Am. St. Rep. 184); *Scott* v. *Perkins,* 28 Me. 22 (48

Am. Dec. 470), note to *Bolling* v. *Kirby* (Ala.), 24 Am. St. Rep. 789; *Wintringham* v. *Lafoy,* 7 Cow. (N. Y.) 735; *Connah* v. *Hale,* 23 Wend. (N. Y.) 462; *Phillips* v. *Hall,* 8 Wend. (N. Y.) 610 (24 Am. Dec. 108); *Allen* v. *Crary,* 10 Wend. (N. Y.) 349 (25 Am. Dec. 566); *Fonda* v. *Van Horne,* 15 Wend. (N. Y.) 631 (30 Am. Dec. 77).

1, 2. An officer making a levy of an execution may at his own risk deliver property levied upon to a bailee and take a receipt thereof. The goods are regarded as still in the officer's control: 4 Cyc. 661–663; 2 Freeman on Executions, § 262; *Palmer-Haworth Logging Co.* v. *Henderson, post,* p. 192 (174 Pac. 531). Where an officer levies a writ of execution on the property of a stranger, the plaintiff in the writ is liable to the owner and person having the right of possession thereof, when he directed the wrongful levy. And such owner has a right of action at once, either for the reclamation of the property, or to recover damages. It not being material that the property was sold or destroyed subsequently to the wrongful levy: 4 Cyc. 762, 764; 2 Freeman on Executions (3 ed.), § 273; 2 Cooley on Torts (3 ed.), p. 895.

In Crocker on Sheriffs (3 ed.), Section 436, it is said:

"It may be said however, generally, that there can be no valid levy upon personal property, under an execution as against any other party than the judgment debtor, unless such property is present and subject to the disposition and control of the officer seeking to make the levy; and unless he takes possession of it, or exercises such dominion over it as will render him a trespasser, if the process under which he acts is not a protection to him. But to constitute a valid levy, or to make the officer a trespasser in such case, it is not necessary that he should take actual posses-

sion of, or touch or manually interfere with the property. It is sufficient in either case, if the property is present, that he claims to exercise control over it by virtue of his writ, or that he makes an inventory of it, or threatens to remove it, unless a receiptor is given. It is not necessary: * * that the officer should leave any person in possession of the property; nor that he should remove the same."

In 35 Cyc. 1671, it is stated:

"Where the officer levies on the property of one person under process against another and takes possession of the property, he is liable to the owner for the loss thereof, although such loss was not due to his fault (citing *Duncan* v. *Stone,* 45 Vt. 118); but no such liability accrues where the officer did not take possession of the property levied on, and the loss was not attributable to his fault or to the making of the levy": Citing *Sammis* v. *Sly,* 54 Ohio St. 511 (44 N. E. 508, 56 Am. St. Rep. 731).

3. It is well settled that the good faith of an officer, or the innocence of his intent do not relieve him of liability for levying on property which does not belong to defendant in the process under which he acts: 35 Cyc. 1660; *Meadow* v. *Wise,* 41 Ark. 285; *Ilg* v. *Burbank,* 59 Ill. App. 291; *Duperron* v. *Van Wickle,* 4 Rob. (La.) 39 (39 Am. Dec. 509); *Snyder* v. *Berger,* 3 Sadler, 318 (6 Atl. 733); *Campbell* v. *Ulch,* 24 Tex. Civ. App. 618 (60 S. W. 272).

The rule is stated in 35 Cyc. 1652:

"Where a sheriff or constable, acting under a writ which specifies no particular property to be levied on thereunder, levies on property belonging to a person other than defendant in the writ, he is liable to the owner of the property for the resulting damage; and the sheriff's liability for such a wrongful seizure is not dependent upon his selling the property."

*Sammis* v. *Sly,* 54 Ohio St. 511, relied upon by defendants, is a case where an attachment was levied on the property of a third person under the mistaken belief that it belonged to the defendant in the writ. But no such custody was taken of the property by the officer as deprived the owner of his control over it and it was lost by fire before the commencement of a suit for the conversion. The court in that case took the precaution to state that:

"If the property had been taken into the actual custody of the officer and so as to deprive the owner of any control over it, a different rule of liability might apply."

When an officer wrongfully exercises a right of dominion over personal property, he is guilty of a conversion, and a levy on chattels in the hands of a third person is a trespass: 2 Freeman on Executions (3 ed.), § 272; *Spaulding* v. *Kennedy,* 6 Or. 208; *Lewis* v. *Birdsey,* 19 Or. 164 (26 Pac. 632); *Marks* v. *Shoup,* 181 U. S. 562 (45 L. Ed. 1002, 21 Sup. Ct. Rep. 724); *Connah* v. *Hale,* 23 Wend. (N. Y.) 462, 466.

The law seems to be more strictly construed against the plaintiff in the writ or those claiming under the writ as to what constitutes a sufficient taking possession under the writ, than against a third person like Sabin, who complains of the taking of his property under a writ against the debtor such as Perlman. In the latter case, it is held that manual possession is not necessary to constitute the taking a trespass, if it be such as for the time is recognized as authoritative by the party dispossessed as Sabin was in this case. It is sufficient to lay the foundation of an action against the officer, if he unlawfully exercised authority over the chattels, against the will and to the exclusion of the owner, although there was no actual taking of the

property or removal: 1 Wade on Attachment, § 242; 2 Freeman on Executions (3 ed.), § 260, p. 1453.

4. The findings of the trial court and the undisputed evidence show that the defendant Chrisman pursuant to the direction of the other defendant attempted to levy upon the property of the plaintiff under a writ of execution against the property of one Perlman. The property was then in the possession of plaintiff by his agents in a certain store building. The plaintiff was divested of the control of the cooking-ranges, and the same were placed in charge of J. S. Fine as bailee for the sheriff in exclusion and defiance of plaintiff's right. The receipt taken by the sheriff shows that the personal property was levied upon under the execution and that the same was received from the sheriff by Fine. It is clear that the sheriff had actual control of the goods by the assistance of the keeper Fine. The acts of the sheriff constituted a wrongful exercise of dominion over plaintiff's property, and a denial of his right to the use and enjoyment of the same. It was not a mere paper levy. It amounted to a conversion of the property. The findings of the trial court do not support the judgment. It is not important whether the property was moved from one place to another, but whether the same was wrongfully taken from the control of the owner, Sabin. For aught that appears had it not been for the attempted levy, the goods might have been sold, and not have been lost.

The judgment of the lower court will be reversed and the cause remanded with directions to enter a judgment in favor of plaintiff against the defendants for $225.50, the value of the goods at the time of the levy.

REVERSED AND REMANDED WITH DIRECTIONS.

McBRIDE, C. J., and JOHNS and OLSON, JJ., concur.