# Jacoby *versus* Shafer.

The Act of May 29, 1879, (P. L., 194), " enlarging the jurisdiction of Justices of the Peace " to include cases where the sum demanded does not exceed \$300, embraces proceedings by attachment under Section 27 of the Act of July 12, 1842, (P. L., 345), relating to fraudulent debtors; as well as ordinary actions begun by summons under the Act of March . 20, 1810, (Purd. Dig., 847).

' March 12, 1884.   Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Northampton County:* Of January Term, 1884, No. 350.

. This was, in the court below, a certiorari to a justice of the peace, bringing up the record in a proceeding by attachment, before the said justice, under Sec. 27 of the Act of July 12, 1842, relating to fraudulent debtors; wherein Cyrus Jacoby was plaintiff and Edward Shafer defendant.

. The plaintiff's claim was for \$125 for goods sold and delivered, and was evidenced by a promissory note.   The alleged fraud was that at the time of issuing the attachment the defendant was about to dispose of his personal property with intent to defraud his creditors.

The justice entered judgment in favor of the plaintiff for

$125 and costs, and the defendant filed the following exception:
" The claim of the plaintiff being over $100 the justice had
no jurisdiction in an action commenced by attachment under
the Act of July 12, 1842."

This exception was sustained by the court and the judgment
was reversed, MEYERS, P. J., delivering the opinion, which
was, inter alia, as follows : . . . . . " The 34th section of the
last mentioned Act (July 12, 1842), provides that, ' This Act
shall not be construed to extend the jurisdiction of justices of
the peace and aldermen to demands above one hundred dol-
lars, etc.' It is, however, contended by the plaintiff that the
Act of May 29, 1879, enlarging the jurisdiction of justices
of the peace, embraces a proceeding by attachment under the
Act of 1842. The 1st Section of the Act of 1879 provides :
' That the aldermen, magistrates, and justices of the peace in
this commonwealth, shall have concurrent jurisdiction with
the courts of common pleas of all actions arising from con-
tract, either express or implied, and of all actions of trover
and conversion, wherein the sum demanded does not exceed
three hundred dollars, except in cases of real contract where
the title to lands or tenements may come in question, or action
upon promise of marriage.' In enlarging the jurisdiction of
justices of the peace, etc., we think the meaning of the statute
is, and the intent of the legislature was to confine it to cases
where justices of the peace already had jurisdiction by the
ordinary common law actions arising from contracts, either
express or implied, etc., where the sum demanded does not
exceed three hundred dollars, and to make the jurisdiction
concurrent with the common pleas only in such cases. It is
true, by the 1st Section of the Act of March 17, 1869, the
courts of common pleas also had jurisdiction to proceed by
attachment against fraudulent debtors, where the debt or
demand exceeded one hundred dollars, precisely as justices of
the peace have under the Act of 1842, where the debt or
demand does not exceed one hundred dollars. It will be
observed, therefore, that after the enactment of the statute of
1869 (supra), justices of the peace and the courts of common
pleas had concurrent jurisdiction in cases of attachment
against fraudulent debtors, with this difference, that the juris-
diction of justices of the peace was expressly limited to
claims not exceeding one hundred dollars. Where, then, the
Act of 1879 (supra), enlarges the jurisdiction of justices of
the peace, and gives them concurrent jurisdiction with the
courts of common pleas, such jurisdiction must be limited to
cases expressly mentioned in the Act. This, in our opinion,
does not include cases of attachment against fraudulent
debtors. . . . . . A proceeding by attachment, though its

ultimate purpose is to recover a debt founded on a contract, either express or implied, is not an action contemplated by the Act of 1879. Though founded on a debt, the essential element of the proceeding is fraud. It is a proceeding unknown to the common law, and has much less the element of an action than a proceeding by foreign attachment. Yet the latter, strictly speaking, has never been held to be an action, as we understand the meaning of that term at common law. Drake on Attachment, Sect. 4. . . . . . As we understand the language and intent of the Act of 1879, its manifest meaning and purpose is to enlarge the jurisdiction of justices of the peace to three hundred dollars in the ordinary common law actions therein specified. This, coupled with the express words of the Act of 1842, that the proceeding by attachment shall not extend to cases where the debt or demand exceeds one hundred dollars, leads us to the conclusion that the justice had no jurisdiction in the case before us."

· Thereupon the plaintiff took this writ, assigning for error the action of the court in sustaining the defendant's exception, and reversing the judgment of the justice of the peace.

*W. E. Doster,* for the plaintiff in error.—The Act of 1879 provides that justices of the peace shall have jurisdiction in " all actions." arising from contract, where the sum demanded does not exceed $300, without reference to whether the action originated in the common law or was created by statute. But the position of the court below, that prior to the Act of 1879, justices had jurisdiction only of common law actions arising from contract, cannot be sustained. By Act of 1810, Purd. Dig., p. 847, justices have jurisdiction " of all causes of action arising from contract either express or implied," up to $100,— a phrase which has been interpreted to mean those contracts which arise immediately out of a course of dealing between the parties—but by Act of 1842, Purd. Dig., p. 858, they had jurisdiction to commence actions by attachments, a proceeding that was altogether statutory, and which was in full force when the Act of 1879 was passed. Referring now to the Act of 1879 itself and comparing it with the Act of 1842, we contend that the Act of 1879 includes attachments issued under the latter, for the following reasons: first, a proceeding by an attachment under the Act of 1842 is an action, and embraced in the phraseology " all actions ;" second, it is an action arising on a contract; third, it is an action, arising on a contract of which the court of common pleas has concurrent jurisdiction with the justice: 3 Black. Com., 116 ; Bouvier's Law Dic. Title " Actions;" Redwood *v.* Consequa, 2 Brown, 62.

*Robert L. Cope*, for the defendant in error.—The word action is defined in the act of 1879 itself: "Action" and "cause of action" are synonymous terms. The phrase "cause of action" has never been construed so as to embrace "attachments" of any kind. Neither can the word "actions" be so construed. The Acts both define "actions" to be such as "arise from contract." An attachment can never be said to arise from contract. Under the Act of 1842, it arises from some act of fraud alleged to have been committed by the defendant entirely independent of the contract, which gives rise to an action under the Acts of 1810 and 1879. It is true the proceedings under the Act of 1842 must be based upon an action, but the attachment proceedings are entirely different and distinct from the proceedings in an action. In the latter, judgment is obtained first, and the debtor's property seized afterwards ; in the former, the order is reversed.

It would not be contended for a moment that under the Act of 1810 a debtor's property could be seized before final judgment. By what terms of the Act of 1879 can such a power be inferred ? The two Acts are *in pari materia*, and it follows that the same words in the two, must be construed in the same way, and the phrase "actions arising from contract" cannot be so construed as to embrace "attachments."

Mr. Justice STERRETT delivered the opinion of the court April 14, 1884.

This record presents the question, wnether the Act of May 29, 1879, P. L., 194, enlarging "the jurisdiction of justices of the peace," etc., embraces proceedings by attachment under the 27th section of the Act July 12, 1842, Purd., 857, pl. 77. The ruling of the court below, deciding this question in the negative, is the only matter assigned for error.

The first section of the Act of 1879 declares "that the aldermen, magistrates and justices of the peace, in this Commonwealth, shall have concurrent jurisdiction with the Courts of Common Pleas of all actions arising from contract, either express or implied, and of all actions of trespass and of trover and conversion, wherein the sum demanded does not exceed three hundred dollars, except in cases of real contract, where the title to lands or tenements may come in question, or action upon promise of marriage." The second section prescribes special modes of proceeding in certain cases, etc.; and the third section repeals "all Acts or parts of Acts inconsistent with the provisions of the previous sections. The Act makes no provision for the issue, service or return of original, mesne or final process; nor, aside from the special provisions contained in the second section, does it prescribe any form of

[Jacoby *v.* Shafer.]

procedure in either of the kinds of action mentioned therein. It was evidently intended that the system of practice prescribed by the Act of 1810, and Acts supplementary thereto, so far as not modified by the second section of the Act aforesaid, should be applicable to the enlarged as fully as it was to the more limited jurisdiction of aldermen and justices of the peace prior to the Act of 1879. In other words, that Act is in the nature of a further supplement to the Act of 1810, and other Acts supplementary thereto. They are all at least *in pari materia*, and must be construed together.

The first section of the Act of 1810, almost in the very words of the Act of 1879, gives justices of the peace "jurisdiction of all causes of action arising from contract, either express or implied, in all cases where the sum demanded is not above one hundred dollars." The next section, pointing out the mode of proceeding, provides for the issue, service and return of a summons, if the defendant is a freeholder, and if not, then either a summons or warrant of arrest at the election of the plaintiff; but, the right to proceed against non-freeholders by warrant of arrest, &c., was almost entirely taken away by the Act of 1842, abolishing imprisonment for debt. Provision is however made in the Act for special proceedings against the person or property of fraudulent debtors. For example, the 27th section, under which the plaintiff in this case proceeded, provides that upon giving bond, as therein required, and making affidavit "that the defendant is about to remove from the county any of his property with intent to defraud his creditors, or has assigned, disposed of, or secreted, or is about to assign, dispose of or secrete any of his property with like fraudulent intent," etc., the plaintiff shall be entitled to a writ of attachment under which the property of the defendant may forthwith be attached and held to answer the plaintiff's claim when finally adjudicated. In so far as the Act of 1842 provides for and regulates proceedings before justices of the peace, it is, in its nature and effect, supplementary to the Act of 1810. The abolishment of imprisonment for debt, generally, necessitated some change in the mode of proceeding before justices of the peace as well as in court; and that was provided for by the Act. It effected a change in the mode of proceeding in certain cases, rather than an enlargement of the jurisdiction of justices of the peace. The same limitation, as to amount, was preserved.

The cause of action in this case clearly arose from contract, and if plaintiff had chosen to waive his right to commence by attachment under the Act of 1842, and had proceeded by summons in the ordinary way, it is conceded the justice would have had jurisdiction to the limit of $300, fixed by the Act of

[Appeal of Susquehanna Ins. Co.]

1879. There is no valid reason why the enlarged jurisdiction should apply to the latter and not to the former mode of proceeding. It cannot be pretended that a proceeding by attachment for the purpose of collecting a debt is not an action, in the full legal sense of the word. As defined by Blackstone, an action is "the lawful demand of one's right;" or, in the language of Justinian, "*jus prosequendi in judicio quod alicui debetur.*" It includes all the formal proceedings prescribed by law for adjudicating and enforcing a right, or denying an unfounded claim or demand. The popular meaning of the word is precisely the same. As defined by Webster, an action is "a suit or process by which a demand is made of a right in a court of justice; a claim made before a tribunal."

The language of the Act is clear and explicit, and we have no doubt it was intended to embrace proceedings such as this, under the Act of 1842 as well as ordinary actions commenced by summons under the Act of 1810.

> The judgment of the Court of Common Pleas is reversed and set aside, and the judgment of the justice is affirmed and record remitted for further proceedings thereon according to law.